**STATE of Missouri, Respondent,**

v.

**Alvin Holt EDMONDS, Appellant.**

**No. 55625.**

Supreme Court of Missouri,
Division No. 2.

Feb. 8, 1971.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Samuel T. Vandover, Public Defender, Clayton, for appellant.

STOCKARD, Commissioner.

Alvin Holt Edmonds was found guilty by a jury of possessing burglary tools in violation of § 560.115 RSMo 1969, V.A.M.S., and pursuant to the Second Offender Act was sentenced by the court to confinement by the Department of Corrections for a term of ten years.

Appellant's first point is that the trial court erred in overruling his motion to suppress evidence because, according to appellant, there was no probable cause for his arrest.

A few minutes before four o'clock of the morning of March 7, 1967, Police Officer David M. Higgins stopped an automobile being operated by appellant after the officer noticed that the license plate was not lighted and that what appeared to be a television set was in the opened trunk of the automobile. When appellant was asked to produce his operator's license he delayed doing so. He stated to the officer that he was a humane officer and that he was on his way to pick up some dogs, and that he had dog cages in his automobile for that purpose. The officer then walked to the automobile and saw a television set on the rear seat and he confirmed that the object in the open trunk was also a television set. There were no dog cages in the automobile. Appellant then told the officer that the

television sets belonged to a passenger in the automobile, but when the passenger was asked about them he said they belonged to appellant. Both men were then placed under arrest for suspicion of burglary and stealing, and given the "Miranda" warnings. In the meantime Officer Loyd arrived in another police automobile, and appellant was placed in that automobile. Appellant then told the officers that the automobile he had been driving was "hot," which indicated to the officers that it had been stolen. It was after this information was received that the officers searched the automobile and found in the back seat a brief case which contained a pry bar, bolt cutter, three screwdrivers, flashlights, gloves, and a wide roll of adhesive tape. Appellant told the officers that he had purchased the various items found in the brief case in St. Louis. These items were the subject of appellant's motion to suppress.

Appellant's contention is without merit for two reasons.

■ First. Appellant admitted the automobile was "hot," that is, that it was stolen and that he had no right to possession. He is not entitled to raise the issue of an illegal search of the automobile of someone else. State v. Booker, Mo., 454 S.W.2d 927; State v. Taylor, Mo., 429 S.W.2d 254. He was not charged with an offense of which the claim of the right of possession of the automobile proved or tended to establish the offense charged, so the rule announced in Glisson v. United States, 5 Cir., 406 F.2d 423 is not applicable.

■ Second. This case is governed by the rule announced in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419, where it was stated that " 'because of their mobility, [automobiles] may be searched without a warrant upon facts not justifying a warrantless search of a residence or office,' " and that " 'The right to search and validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the con-

tents of the automobile offend against the law.' " See State v. Smith, Mo., 462 S.W. 2d 425.

■ Appellant next asserts that error resulted from the giving of Instruction 1 "for the reason that same permitted the jury to convict appellant as charged if the jury found he merely possessed a roll of adhesive tape."

Section 560.115 RSMo 1969, V.A.M.S., provides, in the parts here material, that "any person who * * * has in his custody * * * any tool, false key, lock pick, bit, nippers, fuse, force screw, punch, drill, jimmy, bit, or any material implement, instrument, or other mechanical device whatsoever, adapted, designed, or commonly used for breaking into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house, or door, shutter or window of a building of any kind, shall be guilty of a felony, * * *."

By Instruction 1 the jury was told that if it found and believed from the evidence beyond a reasonable doubt that appellant "did wilfully, unlawfully and feloniously have in his possession the personal property mentioned in the evidence, to-wit: three screwdrivers, one pry bar, one glass cutter, one bolt cutter, adhesive tape, two pairs of canvas gloves, and three flashlights, or any part thereof, [emphasis added] and, if you further find and believe from the evidence beyond a reasonable doubt that the said personal property, if you so find, did constitute material, implements and mechanical devices commonly used for unlawfully breaking and entering into the building of another * * *," and if it found the necessary intent, the jury should find appellant guilty of possession of burglary tools.

In State v. Hefflin, 338 Mo. 236, 89 S.W. 2d 938, 103 A.L.R. 1301, the defendant possessed a "peep light," a crow bar or jimmy, a blackjack, and a revolver. The court first construed the language of the statute to mean that the tools, instruments and devices referred to therein were limited to

those "adapted, designed, or commonly used for breaking into" the places and things described. It was then held that the State in that case did not prove that the flashlight, blackjack and revolver were so adapted or commonly used for "breaking into any of the structures mentioned in the statute," but that reversal of the judgment was not required because the defendant had other tools that were so adapted. The language of the instruction in that case is not set forth in the opinion. However, it was also ruled that " 'in order to create the offense which the statute is designed to punish, [it is not necessary] that it should appear that the tools or implements were originally made or intended for an unlawful use. If they are suitable for that purpose, so that they can be used to break and enter burglariously, it is wholly immaterial that they were also designed and adapted for honest and lawful uses.' " See the cases cited in § 13 of the annotation entitled "Validity, construction, and application of statutes relating to burglar' tools," at 33 A.L.R.3d l. c. 867.

In this case there was expert testimony that in breaking into a building a commonly used method was to place adhesive tape over a window and then hit and break the glass. The adhesive tape prevents the glass from falling and making a noise, and the glass can be removed with it sticking to the adhesive tape. The witness also testified that the adhesive tape in this case was "large, quite wide" and not the normal household tape.

In State v. Emerson, Minn., 169 N.W.2d 63, a conviction for the possession of burglary tools was upheld when they consisted of two chisels, a roll of adhesive tape, and a jar of vaseline. In State v. Valstad, 282 Minn. 301, 165 N.W.2d 19, one of many items possessed by the defendant was a nylon rope. In State v. Layton, 191 Mo. 613, 90 S.W. 724, some of the items possessed by defendant, along with files, keys, and pinchers were scissors and some charcoal. Also, in State v. Furlong, 216 Iowa 428, 249 N.W. 132, the defendant possessed, among other things, a rifle, wrecking bar, sledge, hacksaw, a punch, two bars of soap, some adhesive tape, and a steel drill. These cases do no hold that proof alone that the possession of adhesive tape, or nylon rope, or scissors would constitute possession of burglary tools. But such possession with the other items justified a finding that the items and tools so possessed constituted burglary tools.

To place on the term, "or any part thereof," as it appears in the instruction, the construction urged by appellant does not make the instruction prejudicially erroneous. The jury was not authorized to find appellant guilty if it found he "merely possessed a roll of adhesive tape" as appellant contends. It was required to find that appellant possessed the adhesive tape with the intent to use it for breaking and entering unlawfully into the building of another, and that it was a material commonly used for that purpose. In making this determination the jury was entitled to take into consideration that the adhesive tape was contained in the brief case with the pry bar, the glass cutter, the bolt cutter, the gloves, and the flashlights. There was evidence that adhesive tape is commonly used by burglars as a means of breaking into a building when the place of entrance is made of glass. Therefore, it is as much of a "breaking tool" as an electric drill when it is used to gain entrance through a metal or wooden door.

Appellant expressly limits his contention to the item of adhesive tape, and therefore we need not discuss the other items listed in the instruction, or the other elements of the offense.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.