**STATE of Missouri, Plaintiff-Respondent,**

v.

**Kenneth BARNGROVER, Defendant-Appellant.**

**No. 36024.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

July 16, 1974.

Motion for Rehearing or Transfer Denied
Sept. 11, 1974.

Application to Transfer Denied
Oct. 14, 1974.

Mary E. Fiser, Asst. Public Defender, Clayton, for defendant-appellant.

Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant-appellant appeals a judgment from a jury verdict finding him guilty of murder in the second degree with punishment assessed at 30 years. The issue raised on appeal is whether police officers violated defendant's Fourth Amendment rights by conducting a warrantless search of the defendant's automobile after finding a dead body in the trunk of the car. Under the circumstances of this case, we find the search proper and affirm the judgment.

On January 3, 1971, defendant, who was residing, in Ferguson with his aunt and uncle, Mr. and Mrs. Kienstra, was arrested by Ferguson police for the murder of Dennis Haun. On December 31, 1970, defendant confided in his cousin, Madonna Kienstra, that he had shot and killed Dennis Haun on the previous day and that the body was in the trunk of his car. He showed the body to Madonna. It was on the afternoon of January 3, 1971 that Madonna told her father, Herman Kienstra, that defendant had a dead body in the trunk of his car, and Mr. Kienstra's immediate response was to go to the Ferguson police station and tell police authorities what Madonna had told him. Three police officers accompanied Mr. Kienstra to his residence and found defendant there with his car parked in the driveway. Defendant was placed under arrest, and the trunk of the car was opened by Officer Beeman, disclosing the body with lividity apparent from its four day repose. A .22 caliber rifle identified as belonging to defendant and loose .22 spent shell casings and live shells were in plain view in the trunk. Officer Beeman seized the automobile as evidence and over defendant's objection opened the front door, noting a small hole in the armrest of the door on the front seat passenger side of the car. He accompanied the car to the police garage where it was locked in the garage. Officer Beeman observed the autopsy of Dennis Haun which established that the cause of the death was by a bullet wound. A spent .22 slug fell from the body during the autopsy, apparently having been trapped between the shirt and jacket of the decedent. After the autopsy, Officer Beeman returned to the police garage and removed a .22 caliber slug from the armrest. The slug was determined to have been fired from defendant's rifle.

Defendant, who at the time of the killing was under indictment for the child molestation of Dennis Haun, alleged that the shooting had been an accident; that the gun had accidently discharged killing Haun. According to the video tape recorded statement to the police on the day he was arrested, defendant stated that the gun which he had previously loaded had been on the floor of the car, and when Haun entered the car, Haun picked the gun up placing the stock in front of defendant. During the car ride, Haun made demands upon defendant to buy things for him and threatened to report to police that defendant had kidnapped Haun unless defendant's munificence increased. Defendant picked up the rifle to place it on the floor of the car, and the rifle discharged killing Haun. Defendant then placed the body and rifle in the trunk of the car. After the shooting, defendant made plans to dispose of the body and drove as far as Springfield, Missouri with the body in the trunk intent on going to the State of California, but weather conditions forced him to turn back and return to Ferguson where he searched further for a place to dispose of the body prior to his arrest.

Defendant does not challenge the opening and search of the trunk of the car by police, apparently accepting the fact that when the police were informed by defendant's uncle that there was a four day old dead body in the trunk of defendant's car proper cause existed to look into the trunk. Defendant does, however, seize upon the search and seizure interdictions of the Fourth Amendment regarding the warrantless search of the interior of the car and subsequent receipt into evidence of the .22 slug retrieved from the armrest, alleging that such search did violence to his Fourth Amendment rights. Obviously, the discovery of two slugs—one in the decedent and the other in the armrest—had attenuating effect on defendant's accidental death defense. Inasmuch as the removal of the slug took place at the police station, defendant relies on Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971) and In re J.R.M., 487 S. W.2d 502 (Mo. banc 1972) in support of his position. But there are significant factual differences which distinguish those cases from the situation existing in this case,

and other decisions of the United States Supreme Court and Missouri courts more appropriately apply. In Coolidge v. New Hampshire, supra, Coolidge's automobile had been observed near the area where a murdered girl had been found. After an investigation which lasted about three weeks, police determined that they had proper cause for Coolidge's arrest and did so arrest him. Police seized Coolidge's automobile which was parked in a driveway and towed it to the police station. In what was determined to be a warrantless search, police vacuumed Coolidge's car two days after it was seized and again a year later in an effort to gather information which would implicate Coolidge with the victim's death. In Coolidge v. New Hampshire, the court emphasized that there was no suggestion at the time the car was seized that it had been or was being used illegally; that Coolidge had cooperated during the investigation and at no time made any effort to destroy incriminating evidence and flee. A parallel situation to Coolidge existed in In re J.R.M., supra, which held illegal a warrantless search of the defendant's car for the purpose of obtaining evidence which would connect the defendant with the crime. In J.R.M., because of the similarities of the factual situation, our Supreme Court held the tenets of Coolidge controlling.

The situation in the existing case is considerably different from the facts in Coolidge and J.R.M. In those two cases, the police by warrantless search of automobiles were trying to piece together evidence which would link the defendants to a particular crime. The searches in Coolidge and J.R.M. were for the purpose of incrimination as opposed to investigation. In the instant case, the police knew that defendant had killed the victim with a .22 caliber rifle. The search of the interior of the car was merely investigatory, and the connection between the defendant and the victim's death was already determined. The car was known to be an instrument of the crime, inasmuch as it had been used in an effort to dispose of the incriminating evidence which it contained viz., the body. More nearly felicitous to this case are the United States Supreme Court decisions in Cady v. Dombrowski, 413 U.S. 433, 93 S. Ct. 2523, 37 L.Ed.2d 706 (1973); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed. 2d 730 (1967).[1]

In Cady v. Dombrowski, supra, the court upheld the warrantless search of a trunk of a car after the police had exercised control of it. The purpose of the search was to locate a revolver thought to belong to Dombrowski who had been driving the automobile and had been involved in an accident with it. The search disclosed bloody clothes and other materials which ultimately were used in connection with the trial on murder charges. In Dombrowski, Harris v. United States, supra, and Cooper v. California, supra, were cited with approval, noting that warrantless searches of vehicles by State officers were proper even in cases where it was improbable that the vehicle would be removed or evidence destroyed. The court said that the ultimate standard for the Fourth Amendment would be "unreasonableness" as the guide in determining whether searches and seizures met the standard of that amendment where there was no warrant.

In Harris v. United States, supra, Harris had been identified as leaving the scene of a robbery. He was arrested and his car impounded as evidence. Without warrant, a police officer searched the car and while opening one of the doors spotted some in-

[1] Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), cited by defendant, has no application to the case. In Preston, evidence seized in a warrantless search of a car was excluded, because there was no connection between the charge for arrest (vagrancy) and the search; the search in Preston was not incident to the arrest. In this case, the arrest and investigation were connected.

criminating evidence lying on the metal door stripping. The search in this instance was held to be valid and the evidence obtained admissible.

In Cooper v. California, supra, Cooper was arrested for selling heroin and his car impounded by police. A week later at the police station a police officer searching the car found in the glove compartment incriminating evidence which was held admissible at trial. The court noted that the search of the car was closely related to the reason Cooper had been arrested and the reason for which the car was being retained. The court, in holding that the search of the car held by officers for use as evidence was not unreasonable under the Fourth Amendment, stated, 386 U.S. 1. c. 61, 87 S.Ct. 790:

> "Just as a search authorized by state law may be a unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one. While it is true, as the lower court said, that 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it,' *ibid.*, the reason for and nature of the custody may constitutionally justify the search."

So here, the police had reasonable justification to seize the automobile as evidence in connection with their investigation of the killing which they knew had been committed by defendant. It was reasonable for them to impound the vehicle and retain it for investigatory purposes.

In Chambers v. Maroney, supra, police stopped an automobile which fit the description of a car seen leaving the scene of a robbery. The four men in the car also met the description of those involved in the robbery. The automobile was impounded and a warrantless search was conducted at the police station. It was held that the search of the car did not violate Chambers' constitutional rights and evidence seized by the warrantless search was found to be admissible. In so holding the court stated, 399 U.S. 1. c. 52, 90 S.Ct. 1. c. 1981:

> "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

Certainly there was probable cause in this case to search the car. There was a dead body in the trunk, spent shell casings and a rifle alongside of the body. We believe it would be unreasonable and a dereliction of proper police procedures for the police, with the facts and circumstances before them, not to have impounded the car and searched it for evidence in connection with the killing which they knew defendant had done. As in Cooper and Chambers, the warrant would have no implications. The reason the car was seized was, as in Cooper, closely related to the crime, and, as approved in Cooper, a warrantless search could be made.

In United States v. Young, 456 F.2d 872 (8th Cir. 1972), the court held that it was reasonable to conduct a warrantless search of an automobile towed into a federal garage in St. Louis in connection with a charge against defendant for passing bogus money. Counterfeit bills were found over the visor of the car. In upholding the search, the court relied on Cooper v. California and noted that the police possessed lawful custody of the automobile for a reason closely related to the defendant's arrest, and that the object of the search was related to that arrest. In this case, the arrest and seizure of defendant's car stemmed from the same source—the killing of Dennis Haun by defendant and the use of the car in an attempt to dispose of the body. Applying the standards of Maroney, Cooper, and Young, the search of the automobile was not unreasonable within the meaning of the Fourth Amendment.[2]

---

2. See Cady v. Dombrowski, supra, which also held a warrantless search of a car was not

unreasonable as applying the test where "[t]he Framers of the Fourth Amendment

The application of Missouri law also would sanction the search of defendant's car under the circumstances before us. In State v. Mesmer, 501 S.W.2d 192 (Mo.App.1973) police saw an automobile loaded with merchandise in the rear seat. Since a number of burglaries had taken place in the same general area and a car fitting the description of that driven by the defendant had been observed in the area, the policeman stopped the car and observed what appeared to be stolen merchandise in the rear seat. The defendant's car was towed to the police controlled area and locked up. The trunk of the auto was subsequently searched and disclosed items from a burglary. The court, in holding the warrantless search of both the interior and trunk of the car stated:

"Having justifiably stopped defendant's car, Baxter [police officer] then was able to observe items in plain view, which together with the totality of the circumstances existing, gave him proper cause both to arrest and also to make a search incidental thereto. State v. Miller, 485 S.W.2d 435 (Mo.1972); State v. Hohensee, 473 S.W.2d 379 (Mo.1971); State v. Whitnah, 493 S.W.2d 32 (Mo. App.1973).

"It must be noted, however, that the right to arrest in this situation is a matter of only collateral interest, since the real question is whether the officer had a right to make a search. The law is abundantly clear that an automobile in a situation as the one here can be searched independently of any right of arrest, the key requirement being only that the officer making the search have probable cause to believe that the car contains articles that the officer is entitled to seize. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Brown, 476 S.W.2d 519 (Mo.1972); State v. Hornbeck, 492 S.W.2d 802 (Mo.1973); State v. Hohensee, 473 S.

W.2d 379 (Mo.1971); State v. Edmonds, 462 S.W.2d 782 (Mo.1971).

\* \* \* \* \* \*

"Nor can this search and seizure be invalidated by reason of postponing the opening of the car trunk until the car had been towed to the filling station where it was locked up until an inventory could be conveniently taken. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Hornbeck, 492 S.W.2d 802 (Mo.1973); State v. Smith, 462 S.W.2d 425 (Mo. 1970)."

The police in the instant case had abundant reason after arrest to search defendant's car. And as State v. Mesmer, supra, permitted the search of the trunk of a car in custody based on the discovery of evidence found in the interior of a car, the reverse should apply—where the trunk discloses evidence of a crime, a search should be allowed of the interior for investigatory purposes.

In State v. Hornbeck, 492 S.W.2d 802 (Mo.1973), it was said 1. c. 807:

"Given probable cause to search the automobile the officers were permitted to carry out an immediate search without presenting the probable cause issue to a magistrate. Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In State v. Edmonds, 462 S.W.2d 782, 784 (Mo.1971), this Court followed the Chambers v. Maroney holding, applicable here, that the right to search an automobile and the validity of a seizure are not dependent upon the right to arrest but depend upon the existence of reasonable cause on the part of the seizing officer to believe that the contents of the automobile offend against the law."

The court then approved a warrantless search of a trunk of a car. We find the Hornbeck situation analogous to the in-

have given us only the general standard of 'unreasonableness' as a guide in determining whether searches and seizures meet the

standard of that Amendment in those cases where a warrant is not required." Id. 413 U.S. at 448, 93 S.Ct. at 2531.

stant case. The police here had before them the evidence of the body in the trunk of the car with the fatal weapon and ammunition. There was good, reasonable cause for them to search the interior of the car on the basis of what they had before them in the trunk. State v. Mc-Carthy, 452 S.W.2d 211 (Mo.1970), similarly held that the warrantless search of a trunk of a car based on information gained from the interior of the car was valid. Also, State v. Eaton, 504 S.W.2d 12 (Mo. 1973) sanctioned a warrantless search of a trunk based on information known to the police officers from the interior of the car. Thus, when the incriminating cargo in the trunk was disclosed to them, the police had ample justification to investigate further and inspect the interior of defendant's car.

This case is not the traditional Fourth Amendment search and seizure case of Coolidge and J.R.M. where the search was made to gather evidence to establish that defendant had killed the deceased. The connection between Haun's death and defendant had already been established. The police had the body, the weapon, loose and spent cartridges, and the knowledge that defendant had killed Haun. Defendant had also used the automobile, which had been properly seized, as an instrumentality for disposing of the body. He had made an effort to go to California and at the time of his arrest planned to dispose of the body near the Mississippi River in an area called Missouri Bottoms. Therefore, we view this case as a valid investigation of a killing and preservation of the evidence surrounding the killing properly obtained. The Missouri cases herein cited are appropriate, for they permitted a search of a trunk when incriminating evidence had been discovered in the interior of a car. *A fortiori*, the police may view the interior of the car when incriminating evidence is before them in the trunk.

The application of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685

(1969) and the issue of whether a search of an area beyond the control of defendant have no application here.[3] Chimel applied to a search of a house, and the United States Supreme Court has made a clear distinction between searches involving houses and automobiles. See Cady v. Dombrowski, supra; Chambers v. Maroney, supra; Cooper v. California, supra. Further, we find from the factual circumstances before us that from what was presented to the police in the trunk of the car, proper investigatory procedures required them to look into the car interior.

The judgment is affirmed.

SMITH, P. J., and CLEMENS, J., concur.

McMILLIAN, J., concurs in result.

---

**3.** But see 17 U.C.L.A.L.Rev. 626 (1969–70) for a discussion on an application of Chimel

v. California to the search of an automobile.