[No. 43026. En Banc. July 25, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. GERALD ALFRED MATHEASON, *Appellant*.

[See 36 Am. Jur. 2d, Forfeitures and Penalties § 36.]

*Gary G. Weber,* for appellant.

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

STAFFORD, J.—Gerald Matheason appeals from an order forfeiting his automobile pursuant to RCW 69.50.505. We find that RCW 69.50.505(b)(4) does not satisfy due process requirements and reverse the trial court.

On or about January 8, 1972, a special agent for the

United States Treasury Department purchased one lid of marijuana from appellant at the latter's residence. On January 12, the agent arranged a second purchase of 20 lids to take place at appellant's home the next evening. At 10:45 p.m., January 13, the agent and two Tacoma police officers took up surveillance of appellant's home. Sometime thereafter appellant drove up in the automobile which is the subject of the forfeiture action. He parked the car in the driveway and went into his house.

The officers, armed with an arrest warrant and a search warrant for the residence, went to the house, arrested appellant and searched the home. After finding only a "very small quantity of marijuana" in the house, one of the officers went outside and searched appellant's automobile. He found a brown paper sack containing 20 lids of marijuana in the rear of the car on the floor. Appellant was taken to jail and the automobile was seized.

An amended information was filed January 18, 1972. Count 1 charged appellant with unlawful delivery of a controlled substance on or about January 8. This count related to the original sale of marijuana. Count 2 charged him with unlawful possession of a controlled substance with intent to deliver, on or about January 13, 1972. The latter count related to the 20 lids of marijuana found in appellant's automobile. Appellant entered a plea of not guilty to both counts. Thereafter, he entered a plea of guilty to Count 1 whereupon Count 2 was dismissed by an order dated April 5. Appellant received a "deferred sentence" and was placed on probation June 22, 1972.

On March 8, 1972, appellant began a fruitless effort to regain possession of his automobile, originally seized pursuant to RCW 69.50.505. On March 15, about 2 months after the original seizure, the prosecuting attorney countered with a motion to forfeit the vehicle. On September 5, 1972, appellant again moved for the return of his automobile. The court directed the State to appear and show cause why the car should not be returned. The matter was finally set

for hearing, and on December 5, 1972, the trial court entered the order of forfeiture from which appeal is taken.

Appellant contends that RCW 69.50.505 fails to provide for notice and an opportunity to be heard prior to the seizure of one's property. This, he argues, is a denial of due process and renders RCW 69.50.505 unconstitutional.

The record does not specifically disclose the section of RCW 69.50.505 upon which the State relied to support its seizure of the vehicle. There is no question, however, that the car was seized *without process*. Thus, the seizure must fall within the limitations of RCW 69.50.505 (b) (1)-(4).

Without question the seizure was not made pursuant to subsection (b) (1). Subsection (b) (1) provides that seizure may be made without process if "the seizure is *incident to an arrest* or *a search under a search warrant* or an inspection under an administrative inspection warrant." (Italics ours.) Clearly, the seizure of the car was not made pursuant to a search warrant of any kind. The search warrant held by the police authorized a search of appellant's house, not the search of his automobile. Further, no one has argued seriously that the seizure was "incidental to his arrest" as that phrase has been interpreted in *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). Rather, one of the police officers testified that the search was made because "we had *probable cause to believe* that the defendant . . . was going to deliver some marijuana to a local tavern . . . at that particular evening." (Italics ours.)

There is no evidence that the seizure was based either upon subsection (b) (2) or (b) (3). Thus, we shall not discuss them further.

■  The officer's testimony that the search was based upon "probable cause to believe" that the car would be used to deliver a controlled substance places the instant seizure within the purview of subsection (b) (4). That subsection authorizes seizures without process if "the . . . law enforcement officer has *probable cause to be-*

*lieve* that the property was used or is intended to be used in violation of this chapter." (Italics ours.)

In *Everett v. Slade,* 83 Wn.2d 80, 515 P.2d 1295 (1973), we declared RCW 69.50.505 (b) (4) unconstitutional. The United States Supreme Court, in an opinion handed down subsequent to oral argument in this case, held the Puerto Rican seizure and forfeiture statutes to be constitutional although no preseizure notice or hearing was provided. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 40 L. Ed. 2d 452, 94 S. Ct. 2080 (1974). The court noted at page 679:

> First, seizure under the Puerto Rican statutes serves significant governmental purposes: Seizure permits Puerto Rico to assert *in rem* jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions. Second, preseizure notice and hearing might frustrate the interests served by the statutes, since the property seized—as here, a yacht—will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given. And finally, unlike the situation in *Fuentes* [*Fuentes v. Shevin,* 407 U.S. 67, 32 L. Ed 2d 556, 92 S. Ct. 1983 (1972) ], seizure is not initiated by self-interested private parties; rather, Commonwealth officials determine whether seizure is appropriate under the provisions of the Puerto Rican statutes. In these circumstances, we hold that this case presents an "extraordinary" situation in which postponement of notice and hearing until after seizure did not deny due process.

(Footnotes omitted.)

A comparison of our statute with the Puerto Rican statutes upheld in *Calero* compels a finding that subsection (b) (4) still cannot be allowed to stand. Seizure of appellant's property in *Calero* was accomplished pursuant to Puerto Rico Laws Ann., Title 34, § 1722. As required by that statute, the lessee of the yacht was given notice within 10 days of the seizure. When a challenge to the seizure was not made within 15 days after service of the notice, the

yacht was forfeited pursuant to § 1722(c). By contrast, RCW 69.50.505(c) simply states: "In the event of seizure pursuant to subsection (b), proceedings under subsection (d) shall be instituted promptly."[1] Subsection (d) states: "Property taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the board or seizing law enforcement agency subject only to the orders and decrees of the superior court having jurisdiction over the forfeiture proceedings." There is no provision in RCW 69.50.505 (b) (4) for notice and a hearing even after seizure. While *Calero* holds that in an extraordinary situation such as this, notice and a hearing may be postponed until after seizure, it does not allow for abolishment of notice and a hearing.

Inasmuch as subsection (b) (4) does not provide for notice and hearing even after seizure it is violative of due process even under the holding in *Calero*. Accordingly, the trial court is reversed and the order of forfeiture is dismissed.[2]

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied October 15, 1974.

---

[1] We note that a motion to forfeit was not made until more than 2 months after the seizure, and then only in response to appellant's attempts to regain possession of his automobile. However, because of our holding today, we do not decide whether this satisfied the statutory requirement of prompt action.

[2] In the instant case there is no suggestion that defendant's automobile was originally seized for evidentiary purposes or later held for that reason. Indeed, after dismissal of Count 2 of the information, the car lost whatever evidentiary value it might have had. Thus, our decision should not be interpreted as precluding law enforcement officers from lawfully seizing property for evidentiary purposes. That issue is not before us.