Michael HAMPTON, Respondent,

v.

Raymond S. THURMAND, Defendant.

William B. CALDWELL,
Intervenor-Appellant,

v.

George PEACH et al., Third-Party
Defendants.

No. 62039.

Supreme Court of Missouri,
Division No. 2.

May 11, 1981.

Murry A. Marks, Clayton, for intervenor-appellant.

Michael K. Fagan, Asst. Circuit Atty., St. Louis, for third-party defendants.

WELBORN, Commissioner.

Proceeding under Section 195.145, RSMo 1978, for forfeiture of motor vehicle used to transport heroin. Trial court entered judgment of forfeiture. Vehicle owner appeals, contending that Section 195.145 is unconstitutional.

At approximately 3:51 A.M. on April 21, 1978, in the City of St. Louis, a white 1974 Oldsmobile sedan was being driven north on Union Boulevard, approaching that street's intersection with Delmar Boulevard. The vehicle had four occupants. Raymond S. Thurmand was driving. To his right was Edward Caldwell. In the rear seat, behind Edward Caldwell, was William B. Caldwell, the owner of record of the Oldsmobile. To his left, behind the driver, was Henry Brown. As the auto approached the intersection from the south, a southbound marked police car was stopped on the north side of that intersection. Michael Hampton, a uniformed officer of the St. Louis Metropolitan Police Department, was alone in the police car.

From the police car, Hampton observed the Oldsmobile slow and reach the intersection. The left rear door of the Oldsmobile opened, Henry Brown jumped from the car and ran across the intersection directly toward Hampton. As Henry Brown ran, he

was shouting and yelling to the officer, "They are going to kill me; that fellow in the back seat got a gun" or words to that effect. The Oldsmobile turned east into Delmar Boulevard and proceeded away from the intersection. Having heard and seen Henry Brown, the officer admitted Brown to the police car and turned to follow the Oldsmobile. The police car's emergency lights and siren were activated. The Oldsmobile eventually pulled to the curb in the 5100 block of Delmar. The police car stopped behind the Oldsmobile and Hampton requested, via his police radio, that police assistance be dispatched. Plaintiff asked the three remaining occupants of the Oldsmobile to get out of the car. They did so while Police Officer Terry McDermott arrived to assist plaintiff. At the rear of the Oldsmobile, Hampton conducted a "patdown" frisk of defendant Thurmand and the Caldwells. No weapon or contraband was found. After telling Officer McDermott what Henry Brown had just said and done, Hampton requested that Officer McDermott examine the passenger compartment of the Oldsmobile. Other police officers arrived, responding to the initial call for assistance, and remained near the three suspects at the rear of the Oldsmobile while Hampton went to assist Officer McDermott.

Officer McDermott examined the front seat area of the Oldsmobile while Hampton examined the rear seat area. Officer McDermott noticed that the screws in the dashboard near the automobile radio differed in appearance from other screws in the dashboard. He also noticed that a small piece of the dashboard, at the edge of the in-dash ashtray nearest the automobile radio, had been broken away. Officer McDermott opened the ashtray and saw that the small broken-away opening in the dashboard, visible when the ashtray was closed, was part of a larger broken-away opening. This larger opening was at the upper left-hand corner of the rectangular indentation in the dashboard into which the ashtray fit.

Looking through this larger opening, Officer McDermott observed two plastic bags filled with brown powder. These bags were affixed to metal inside the dashboard by means of magnets. Officer McDermott seized the two bags and the magnets. Hampton then went to the front seat area of the Oldsmobile and observed, underneath the dashboard and resting on the hump in the center of the automobile's floor, what appeared to be part of a handgun protruding from a heating vent. Closer examination revealed that the item was, in fact, a fully loaded .22 caliber revolver, which was then seized. The heating vent in which the gun had been resting was directly below and back toward the firewall, inches from where the bagged brown powder had been found.

Hampton had the Oldsmobile seized and towed to the police garage for evidence and for safekeeping. Thurmand and the Caldwells were taken to the district police station and booked on charges of kidnapping, carrying a concealed weapon and violation of the Missouri controlled substances laws. Henry Brown signed forms indicating that he had no desire to assist the state in prosecuting the kidnapping cases against the three arrestees. The two bags seized from the Oldsmobile were delivered to a chemist employed by the police department. The contents of the two bags were analyzed and determined to be heroin, having a total weight of 43.73 grams. Hampton went to the Circuit Attorney's Office to seek institution of proceedings against the occupants of the Oldsmobile. The Circuit Attorney declined to institute such proceedings. Hampton also inquired about forfeiture proceedings against the automobile.

The "Petition for Forfeiture" was filed in the St. Louis Circuit Court on May 4, 1978. Thurmand, the driver of the vehicle, was named as defendant. On May 8, 1978, Caldwell, as owner of the vehicle, filed a motion to be allowed to intervene in the action. He also filed a "Motion to Stay Proceedings," pending determination of an action he had filed in federal court, seeking a ruling that Section 195.145 was unconstitutional. The federal action was dismissed. See *Caldwell v. Camp*, 594 F.2d 705 (8th Cir. 1979).

On August 7, 1978, an answer and counterclaim were filed on behalf of Thurmand and Caldwell. The answer asserted the unconstitutionality of Section 195.145. The counterclaim did likewise, naming the City of St. Louis and the State of Missouri as third party defendants, and requesting a declaratory judgment that the statute is unconstitutional. By an amended answer and counterclaim dated December 15, 1978, George Peach, Circuit Attorney for the City of St. Louis, Eugene Camp, Chief of Police for the City of St. Louis, and the Board of Police Commissioners for the City of St. Louis, individually, were added as third party defendants.

Interrogatories were filed by Thurmand and Caldwell, evoking objections on behalf of plaintiff and third party defendants and further interrogatories by defendants.

The matter came to trial on October 31, 1979. The plaintiff adduced the testimony of Officers Hampton and McDermott to the facts as set out above. A police department chemist identified the contents of the sacks taken from the Oldsmobile as heroin. No evidence was offered by defendants. Taken with the case was defendants' "Motion in Limine" to suppress the evidence seized from the auto on the grounds that they were obtained by reason of an illegal search and seizure. Post-trial memoranda were filed by the parties. On January 18, 1980, the trial court entered its findings of fact, conclusions of law and judgment. It overruled the "Motion in Limine" to suppress evidence; found the automobile a public nuisance and ordered it sold at public auction; and found Section 195.145 constitutional under Federal and State Constitutions.

Defendant Thurmand appealed.

Appellant's first point on appeal is:

"The Trial Court Erred In Overruling Appellant's Motion In Limine And Further Erred In Allowing Into Evidence Over Appellant's Objection The Heroin Seized by Officer McDermott From Appellant's Automobile Because: (1) The Arrest of The Appellant Was Unlawful And Violated His Rights Pursuant To The Fourth, Fifth and Fourteenth Amendments To The United States Constitution In That Officer Hampton Lacked Probable Cause To Arrest Appellant Because He Acted As A Result Of The Unsubstantiated And Unreliable Tip Or Information Given Him By Henry Brown; (2) The Search Of The Vehicle And The Seizure Of The Heroin And Gun Were In Violation Of Appellant's Fourth, Fifth And Fourteenth Amendment Rights Because The Subsequent Patdown And Complete Search Of The Persons Of The Occupants Of Caldwell's Automobile Did Not Substantiate Brown's Tip That Appellant Had A Gun On His Person; (3) The Scope Of The Search Went Far Beyond Legal Limits Since It Encompassed An Area Beyond Which The Arrestees Could Have Obtained A Weapon; (4) Informant Brown Did Not Tell Officer Hampton That Appellant Had Concealed A Weapon Or Narcotics In The Vehicle; (5) The Search and Seizure Of The Car Was Not Conducted Pursuant To Impoundment Or Inventory; (6) The Search And Seizure Was Conducted Without A Valid Warrant Nor Any Other Exception To The Rule Requiring Search Warrants Such As 'Exigent Circumstances'; (7) Neither Officer Hampton Nor McDermott Saw Any Weapons Or Contraband In Plain View In The Vehicle And (8) The Evidentiary Search Conducted By The Officers Was A Subterfuge And (9) The Police Had Ample Time To Obtain A Warrant."

■ The trial court did uphold the search as incidental to a valid arrest. However, the validity of the arrest * * * is of no moment here because of the rule from *State v. Edmonds*, 462 S.W.2d 782, 784 (Mo. 1971), restating *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970):

... The right to search [an automobile] and [the] validity of the seizure are not dependent upon the right to arrest but depend upon the existence of reasonable cause on the part of the seizing officer to believe that the con-

tents of the automobile offend against the law.

"*State v. Hornbeck*, 492 S.W.2d 802, 807 (Mo.1973).

"The Court in *Hornbeck* stated the definition of probable cause to be 'more than mere suspicion ... [existing] where the facts and circumstances within the knowledge of the seizing officers, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed or that the contents of the automobile offend against the law.' Id. at 805."

*State v. Morgan*, 592 S.W.2d 796, 804[3] (Mo. banc 1980); vacated on other grounds, *Morgan v. Missouri*, 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980), re-adopted, *State v. Morgan*, 612 S.W.2d 1 (Mo. banc 1981).

The circumstances of this case afforded probable cause for the police action in this case. At 3:51 A.M., Officer Hampton saw Brown jump from the Oldsmobile and run toward the policeman's vehicle, shouting that a man in the back seat of the car was trying to kill him. Certainly this complaint called for action on the part of the officer. Coming as it did at such a time and from a threatened victim of a crime, the officer was not required to verify the credibility of the complainant before undertaking to act. See *State v. Perry*, 499 S.W.2d 473, 475[5–10] (Mo.1973). Appellant, in effect, concedes that the officer properly stopped the vehicle and conducted a pat-down search of the occupants. They contend, however, that when such search was non-productive, no further search was permissible.

Given the complaint voiced to the officer—that the rear seat passenger had a gun—and the fact that the vehicle had traveled some two blocks from the point where Brown got out of it, the failure to find a weapon on the person of any of the passengers reasonably led the officer to conclude that the weapon was to be found in the Oldsmobile and, when it was not in open view, that the weapon was concealed in the automobile and therefore, that its "* * * contents offend[ed] against the law." *Hornbeck*.

The search which produced the concealed weapon and, incidentally, the heroin, was based upon probable cause and therefore the trial court did not err in overruling the motion directed at suppressing the use of the heroin.

Appellant's argument pretty well overlooks the so-called "automobile exception" in search and seizure cases. He asserts that *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), "* * * is the dispositive case with regard to the question of whether or not the trial court erred in overruling appellants' Motion in Limine." The basic question in *Adams* was legality of the arrest. The search was upheld because the court found the arrest legal and the search properly incident thereto. Of course, a warrantless arrest, or a warrantless automobile search, must be based upon probable cause. *Adams* found probable cause for the arrest there, but its holding does not preclude a finding of probable cause for the search in this case.

### Constitutionality of Section 195.145

Section 195.145, a part of the controlled substances law, authorizes the forfeiture to the state of any vehicle used in violation of Section 195.025. Section 195.025 prohibits unauthorized transportation of controlled substances and concealment or possession of any controlled substances in a vehicle. Section 195.145 requires any peace officer, upon making an arrest for violation of the controlled substances law, to seize any vehicle so used. The officer seizing the vehicle is required to commence a petition in the name of the state against the person from whom the property is seized. The petition must describe the property and the circumstances of the seizure and pray for a declaration that the vehicle is a public nuisance and direction for its sale. Section 195.145 then provides:

"1. * * * A summons shall be issued and process served on the defendant as in other civil suits. The defendant shall file

his answer within thirty days after service of process upon him, whether such service is personal service, service by mail, or service by publication. After defendant's time for filing answer has expired, the court shall fix a day for hearing and the action shall be heard by the court without a jury and shall be conducted, except as otherwise provided in this law, as other cases under the code of civil procedure of the state of Missouri.

"2. In addition to any other process provided by the civil code, the clerk of the circuit court shall cause to be published one time in some newspaper having a general circulation in the county where the action is pending, or if there is no newspaper of general circulation in the county, then in some newspaper of an adjoining county, a notice to all persons whom it may concern, that the petition has been filed in court, briefly describing the vehicle, vessel, or aircraft seized, the time and circumstances of the seizure, the person from whom seized, and stating that any person claiming any interest in the property may, upon his own request, be made a party to the action and assert any claim he may have thereto within thirty days after the publication of the notice."

Subparagraph 3 provides for intervention in the proceeding by persons claiming an interest in the vehicle.

Subparagraph 4 prescribes the judgment which the court may enter. Provision is made for protection of lien holders.

"5. Officers who make seizures of vehicles, vessels or aircraft, as described herein, are authorized to call upon the prosecuting attorneys of the respective counties and the circuit attorney of the city of St. Louis and the attorney general of the state of Missouri to represent them in the proceedings contemplated by this section, and thereafter it is the duty of such prosecuting or circuit attorney or the attorney general to proceed on behalf of the officer making the call according to the provisions of this section.

"6. Appeals shall be allowed from the judgment of the court as in other civil actions.

"7. Under no circumstances shall the officer commencing the action on behalf of the state be liable for any costs or storage."

Appellant challenges the constitutionality of this statute as violative of federal and state constitutional provisions for various reasons.

### A.

■ Summary seizure of vehicle without notice to owner violates due process requirement of Fourteenth Amendment to United States Constitution.

Appellant's reliance on this score is primarily upon *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). *Fuentes* dealt with statutes providing seizure without notice of property involved in private replevin proceedings. *Fuentes* recognizes the validity of governmental seizure of property without notice in certain circumstances. 407 U.S. 91, 92 S.Ct. 2000. In *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679–680, 94 S.Ct. 2080, 2089–2090, 40 L.Ed.2d 452 (1974), the court recognized seizure of a vehicle used for unlawful purposes as within the exception noted in *Fuentes*. The objection based upon *Fuentes* is without merit. See *State v. One 1970 2-Door Sedan Rambler (Gremlin)*, 191 Neb. 462, 215 N.W.2d 849, 850[1, 2] (1974).

### B.

#### Prior Judicial Approval of Seizure.

■ Appellant complains that a peace officer may seize a vehicle without prior judicial approval and without providing any evidence that the vehicle has been used in a violation of the controlled substances law. The law does provide for a judicial post-seizure hearing on the propriety of the seizure. Prior judicial approval is not required as an element of due process. The post-seizure judicial hearing satisfies due process requirement. *State v. One 1970 2-Door Sedan Rambler (Gremlin)*.

## C.

### Time for Beginning Action.

█ Appellant complains that the statute sets no time within which the officer must begin the forfeiture action. He contends that his property might be held for an indefinite period of time and that he would have no legal or equitable remedy either to compel the beginning of the action or for return of the vehicle. The absence of any specified time for bringing the action for forfeiture does not render the statute facially unconstitutional. See *United States v. One 1973 Buick Riviera Automobile*, 560 F.2d 897, 901[6] (8th Cir. 1977).

Here, the action was brought promptly and there was no such delay as might have affected the right to maintain the action.

## D.

### Trial by Jury.

█ Appellant asserts that the statute is unconstitutional because it deprives him of a right to a jury trial. Appellant advances this argument without citation of authority. Such a bald statement is insufficient to raise a constitutional question in this Court.

## E.

### Reimbursement of Owner.

█ Appellant's complaint on this score is stated as: "The Statute Summarily Deprives The Owner Of the Seized Property, Namely The Appellant Herein, Of The Use and Benefit Of Said Property For An Indeterminate Period Of Time Without Requiring The State To Reimburse The Owner Of The Property Either Temporarily Or Permanently For His Loss Of Use Of Said Seized Property." The seizure is a valid exercise of the police power " * * * to which the constitutional requirement of compensation is inapplicable." *United States v. One 1962 Ford Thunderbird*, 232 F.Supp. 1019, 1022[11] (N.D.Ill.1964).

## F.

### Trial Delay.

█ Appellant complains that the statute contains no provision requiring prompt adjudication of the forfeiture action after it has been filed. He is obviously in no position to complain on this issue. Instead of seeking expeditious determination of the petition in the state courts, the defendants resorted to federal jurisdiction and did not respond to the state action for more than three months. Thereafter their pre-trial maneuvers served only to delay the matter. In any event, the complaint is answered in: *United States v. One 1973 Buick Riviera Automobile*, 560 F.2d 897 (8th Cir. 1977), wherein the court stated (560 F.2d 901, Fn. 3):

> "Appellant seeks to enhance his argument by tacking onto this period [of five months between the seizure of the vehicle and the filing of the forfeiture complaint] the eleven months which passed before the district court rendered its decision on the forfeiture complaint. We have discovered no case in which a reviewing court has considered a judicial delay in determining the merits of a forfeiture action as being relevant on the due process issue. Moreover, it would be unfair to impute this delay to a government agency which has no power to control the court's docket."

## G.

### Remedy of Owner.

█ Appellant complains that the statute fails to provide a remedy for the owner to regain his vehicle pending a determination of whether a petition for forfeiture will be filed by the officer who seized the property. Contrary to the situation in cases relied upon by appellant in which statutes expressly prohibited proceedings by the owner to regain his property (*State v. One 1972 Mercury Capri*, 85 Wash.2d 620, 537 P.2d 763 (banc 1975); *State v. Matheason*, 84 Wash.2d 130, 524 P.2d 388 (banc 1974); *State v. Miller*, 248 N.W.2d 377 (S.D.1976)), the Missouri statutes contain no such provision. Just what action might be available to the owner under the Missouri statute

need not be determined inasmuch as appellant sought no such relief. However, nothing in the statute would preclude a replevin action by the owner. Appellant points to no case holding that the forfeiture statute is required to provide an express remedy to the owner.

## H.

### Liability of Officer

■ Appellant complains that the statute "insulates" the officer against liability for a wrongful seizure. He does not point to the provision of the statute which does so. The officer is excused from liability for storage charges (§ 195.145 7.), but there is no reference to his liability otherwise. Again, appellant provides no authority which would require that the statute expressly provide a remedy against the officer for a wrongful seizure.

Although the foregoing analysis is intended to dispose of the appellant's specific attacks upon Section 195.145, reference to their general complaints may be in order, although the scatter-gun nature of such attack renders a response difficult.

Appellant points to the differences between Section 195.145 and the Puerto Rican statute held constitutional in *Calero*. The forfeiture procedure under that statute required notice to the owner within 10 days after seizure of the property and gave the owner 15 days thereafter to file a complaint challenging the seizure. Absent objection, the property might be sold at the end of the 25-day period. The statute permitted the owner, within 10 days of the filing of a challenge to the seizure, to regain possession of the property by filing a bond. If no bond was filed, the property might be sold at the end of the 25-day period, with the owner being entitled to the higher of the appraised value of the property or the proceeds of the sale.

*Calero* was concerned, insofar as the issues are here presented, with only the complaint that, under *Fuentes*, the lack of a pre-seizure judicial hearing offended due process. The court found the situation covered by the Puerto Rican statute, an "extraordinary" situation, recognized by *Fuentes*, " * * * in which postponement of notice and hearing until after seizure did not deny due process." 416 U.S. 680, 94 S.Ct. 2090. Worthy of note is the fact that the vessel involved in *Calero* was a yacht, valued at $19,800.00. The yacht had been leased and was used by the lessees to transport marihuana, the cause for the seizure. Notice of the seizure was given to the lessees and they failed to file a challenge within 15 days, resulting in the forfeiture of the vessel to the Government of Puerto Rico. The owner-lessor had no knowledge of the seizure before the forfeiture became effective and it was conceded, upon its attempt to regain the vessel, that the owner "was 'in no way * * * involved in the criminal enterprise carried on by [the] lessee' and 'had no knowledge that its property was being used in connection with or in violation of [Puerto Rican Law]'." 416 U.S. 668, 94 S.Ct. 2084. The court, nevertheless, sustained the forfeiture.

Appellant argues that *Lee v. Thornton*, 538 F.2d 27 (2d Cir. 1976) (reversed on other grounds, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975)), fixes a time table which must be adhered to in forfeiture action. In that case, the vehicle involved was seized under summary forfeiture procedures of the 1930 Tariff Act (19 U.S.C. § 1459, § 1594). The statute in effect required the owner of the property to post a $250 bond in order to obtain an administrative hearing upon the validity of the seizure. The court held the procedure lacking in due process and specified the following procedure in such cases (538 F.2d 33[4]):

" * * * [W]hen vehicles are seized for forfeiture or as security, action on petitions for mitigation or remission should be required within 24 hours, with notice of the charge, and with opportunity to file a written response and to make an oral appearance and that, if requested, some kind of hearing on probable cause for the detention before an officer other than the one making the charge should be provided within 72 hours if the petition is not granted in full."

The *Lee* requirements have been held inapplicable to seizures under other federal forfeiture statutes. See *United States v. One 1978 Cadillac Sedan De Ville*, 490 F.Supp. 725 (S.D.New York 1980). The Missouri statute differs from that in *Lee*, e. g., the owner of the property is not required to post a bond in order to obtain a hearing.

Appellant also relies upon *Matheason* and *Miller*. In those cases state courts held unconstitutional state forfeiture statutes which contained no provision for notice and hearing upon the seizure of property. The Missouri statute is not subject to that objection because it does provide for notice and hearing prior to forfeiture. Those cases, therefore, offer no basis for holding the Missouri statutes lacking in due process.

■ Appellant's third point is directed at the requirement that an innocent owner carry the burden of showing, in the forfeiture proceeding, that the use of the vehicle in violation of the law was without his knowledge or consent. § 195.180, RSMo 1978. See *State ex rel. Reid v. Kemp*, 574 S.W.2d 695 (Mo.App.1978). The constitutional attack upon this requirement was not raised in the trial court and will not be considered for the first time on appeal. In any event, see *United States v. One 1973 Volvo*, 377 F.Supp. 810, 812–813[7] (D.C., W.D.Tex.1974).

Judgment affirmed.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.