930 F.2d 729
 Irene MILLS, dba Unicorn Leasing Co., Inc.; Clarence Mills,
dba Unicorn Development Co., Inc., Plaintiffs-Appellants,
v.
R.J. GRAVES, Island County Sheriff; John J. Robertson;
Jane Doe Robertson, and the marital community
comprised thereof, Defendants-Appellees.
 No. 90-35086.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1990.
Decided April 11, 1991.
As Amended on Denial of Rehearing and
Rehearing En Banc June 4, 1991.
 
 Scott A. Milburn, Preston, Thorgrimson, Shilder, Gates & Ellis, Seattle, Wash., for plaintiffs-appellants.
 Stephen Powell Larson, Stafford, Frey, Cooper & Stewart, Seattle, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before TANG, O'SCANNLAIN and LEAVY, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must determine whether the district court properly dismissed, on a motion for summary judgment, appellants' section 1983 action against a police officer. The claimed civil rights violation was the seizure and forfeiture of construction equipment purportedly owned by the Millses. We conclude that the officer was protected from liability by qualified immunity, and thus we affirm.
 
 
 2
 * Greg Mills, an employee and former officer with Unicorn Development, used equipment owned by Unicorn Equipment Company to excavate a trench which facilitated the burial of two marine dry cargo containers on the property of Ray Atkinson. Unicorn Development was owned by appellant Clarence Mills, Greg's father, and Unicorn Equipment was owned by appellant Irene Mills, Greg's mother. Atkinson subsequently used the buried containers to grow marijuana. All of the Millses contend that they were unwitting participants in Atkinson's scheme.
 
 
 3
 The construction work came to the attention of Detective John Robertson, of the Island County, Washington, Sheriff's Office, after an anonymous tipster and a concerned citizen telephoned him to report the burial of the containers. Based on these tips and his own investigation, Robertson obtained a search warrant for Atkinson's property. At the site, Robertson discovered the marijuana grow operation.
 
 
 4
 Robertson then obtained search warrants for the Mills residence. From the Mills residence, he obtained a telephonic search warrant to search an adjacent property.
 
 
 5
 On February 2, 1989, the construction equipment was seized. Notices were sent to the Millses, pursuant to state law, outlining procedures for a hearing to challenge the forfeiture. In March 1989, Irene and Clarence brought this suit against Sheriff Graves and Detective Robertson pursuant to 42 U.S.C. Sec. 1983 and Wash.Rev.Code Sec. 69.50.
 
 
 6
 Both parties moved for summary judgment. On November 9, 1989, the district court issued its order denying the Millses' motion for partial summary judgment and granting the officers' motion for summary judgment. The court noted that one of the Millses' causes of action had been abandoned and another failed to state a claim. All causes of action were dismissed as to Sheriff Graves. As to the other three causes of action, asserting federal constitutional violations (under the fourth, fifth, and fourteenth amendments) and violations of state law in the searches and seizure of property, the court dismissed the counts as to Robertson on the basis of qualified immunity and declined jurisdiction over the pendent state-law claim.
 
 
 7
 The Millses now appeal the dismissal of their section 1983 action. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 II
 
 8
 The primary issue presented by this appeal is whether Officer Robertson's search of the Millses' property and seizure of the construction equipment is protected from a federal civil rights suit by qualified immunity. See Malley v. Briggs, 475 U.S. 335, 339-40, 343, 106 S.Ct. 1092, 1095-96, 1097, 89 L.Ed.2d 271 (1986). An immunity shield extends only so far as the officer's conduct is objectively reasonable. See Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In the context of a police officer obtaining a warrant, immunity will be lost only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. Malley, 475 U.S. at 344-45, 106 S.Ct. at 1097-98 (citing United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984) (establishing good faith exception to exclusionary rule)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley, 475 U.S. at 341, 106 S.Ct. at 1096.
 
 
 9
 Officer Robertson bears the burden of establishing his qualified immunity defense, including the reasonableness of his belief that his conduct was constitutional. Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir.1988). We subject the district court's dismissal to de novo review, viewing the evidence in the light most favorable to the appellants. Hansen v. Black, 885 F.2d 642, 643 (9th Cir.1989).
 
 
 10
 * The Millses contend that search warrants obtained by Officer Robertson and the affidavits in support suffered from a variety of defects, rendering Robertson's searches of their various properties and seizure of equipment and records violative of the fourth amendment. Their specific contentions are discussed in turn.[1]
 
 
 11
 * The search warrants issued for the Millses' property contained the boilerplate language that there was "probable cause to believe that controlled substances ... are being used, manufactured, ... or kept" on the searched property. However, the Millses correctly point out that Robertson's affidavit supporting the warrants contained no allegation remotely suggesting that narcotics would be found upon the searched premises. They contend that the inclusion of this language in the warrant rendered the issuing judge's finding of probable cause erroneous.
 
 
 12
 The Millses have not explained how the inaccurate language in the warrants has any impact on their validity. The warrants clearly described with particularity the place to be searched and the objects to be seized. See generally 2 W. LaFave, Search & Seizure Secs. 4.5-4.6 (2d ed. 1987). We know of no further requirement that the warrant articulate the foundation for the finding of probable cause.[2] Robertson's reliance upon the warrant could not have been unreasonable on this ground. See Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987) (question is whether objectively reasonable officer could have believed search and seizure to be lawful "in light of clearly established law").
 
 2
 
 13
 The Millses contend that Judge Hancock (who issued the search warrants for the Millses' properties) lacked a substantial basis for concluding that Greg Mills or his equipment was involved in any wrongdoing. In particular, the Millses decry Officer Robertson's affidavit as being based entirely on uncorroborated hearsay[3] and observations of innocent activity. They also suggest that portions of the affidavit were knowingly false, entitling them to a Franks hearing.
 
 
 14
 Officer Robertson first obtained a warrant to search the Atkinson property. The supporting affidavit included the following information: An anonymous tipster described the marijuana grow operation, that Atkinson and Greg Mills frequented the property three years ago (when a grow operation was discovered there by the tipster), that Greg Mills now supplied the heavy equipment for this operation, and that he/she had not reported the earlier operation for fear of retribution from Atkinson and Mills. A concerned citizen described in detail the ongoing construction work, observing that the equipment was operated "at all hours into the night" and "that most of the reported, suspicious activity was accomplished at night under the cover of darkness." Neither informant had a criminal history or was a regular police informant.[4] The descriptions of this grow operation matched other grow operations. The heavy equipment owned by Greg Mills was at the Atkinson property for weeks at a time. Other police agencies reported on Mills' and Atkinson's past drug convictions and ongoing investigations. Robertson observed various equipment owned by Greg or Irene Mills on or near the Atkinson property. Robertson believed a drug grow laboratory was being constructed, noting his experience and that permits had not been obtained for most of the construction work.
 
 
 15
 The affidavit in support of the warrants to search the Millses' property, which is challenged here, included as an attachment the affidavit described above and essentially served as a report on Robertson's discoveries at the Atkinson property and a list of possible confederates. Additional evidence of the grow operation consisted of an extremely high power bill. Robertson's search uncovered the grow operation itself. A concerned citizen identified Greg Mills as the owner and operator of the heavy equipment at the property and was seen "participating in every phase of the aforementioned marijuana grow operation construction." Atkinson's wife identified Mills as a friend of her husband's who had been doing construction work for him.
 
 
 16
 The Millses argue that the statements concerning Greg Mills' purported criminal history in the affidavit were false and entitle them to a Franks hearing. See Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676-77, 57 L.Ed.2d 667 (1978). There is no "good faith" exception to the Franks doctrine: a warrant based upon knowing or recklessly made falsehoods in the affidavit will be invalid. Leon, 468 U.S. at 914, 104 S.Ct. at 3416. However, no Franks hearing need be held if there is sufficient content in the affidavit apart from the challenged material to support a finding of probable cause. See Franks, 438 U.S. at 171-72, 98 S.Ct. at 2684-85. Thus, as the district court did, we must examine the affidavits to determine if they state a substantial basis for a finding of probable cause with the challenged material excised.
 
 
 17
 Even without the questionable statements of Mills' criminal past and present, there was probable cause to search the Millses' property. The affidavits revealed that Mills had dug the hole into which a marijuana laboratory was placed, after which a garage was built over the site. Mills had done the work himself, usually at night. He had participated in every phase of the construction, and had been linked to an earlier grow operation by an anonymous tipster who was afraid of him (and who, in Robertson's estimation, qualified as a "concerned citizen"). There were no permits or obvious, innocent explanations for the sort of work being done.[5]
 
 
 18
 The affidavits appear more than sufficient to justify issuance of the warrant to search the property where the construction equipment was kept. Greg Mills' participation in the suspicious activities at a minimum gave the officer a reasonable belief that Mills was a part of the criminal enterprise. See United States v. Rodriguez, 869 F.2d 479, 483 (9th Cir.1989). With or without the challenged statements, there is a sufficient basis for a finding of probable cause. The Millses failed to assert facts upon which a trier of fact could doubt the basis of the warrant or Robertson's reliance upon it.[6]
 
 3
 
 19
 The Millses also contend that no Washington statute authorized forfeiture of their equipment, asserting that none of the provisions of section 69.50.505(a) would apply to the equipment. Again, the key to immunity is not whether a particular subsection did or did not cover the equipment, but whether Robertson held an objectively reasonable belief that the equipment could be seized under one of the subsections. In this particular context, the inquiry focuses upon the clarity of the law which purportedly forbids Robertson's actions. See Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988) ("The relevant inquiry is whether a reasonable government official could have believed that his conduct was lawful, in light of clearly established law and the information he possessed.") (citations omitted).
 
 
 20
 Subsection (a)(6) of section 69.50.505 permits the seizure and forfeiture of all "drug paraphernalia." Subsection (a)(2) permits the same treatment for "[a]ll raw materials, products, and equipment of any kind which are used ... in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance." Neither subsection yet has generated a body of interpretive case law to delineate the boundaries of these subsections' reach.[7] Thus, it cannot be said that Washington law was "clearly established" forbidding forfeiture of the Millses' equipment at the time of Robertson's actions. Even if Robertson was incorrect in interpreting section 69.50.505(a) to permit forfeiture of the equipment, his reliance appears reasonable based upon the plain language of the statute and the absence of case law. See Thorsted, 858 F.2d at 573-75.
 
 
 21
 The Supreme Court has stressed that summary judgment is especially appropriate where the court determines that an official's conduct did not violate the applicable law or that any violations did not pertain to "clearly established" law. See Harlow, 457 U.S. at 818-19, 102 S.Ct. at 2738-39. Here, in light of the uncertain application of Washington law and the complete absence of evidence suggesting Robertson acted unreasonably, we cannot place the officer in the categories of "plainly incompetent" or "those who knowingly violate the law." See Malley, 475 U.S. at 341, 106 S.Ct. at 1096.
 
 4
 
 22
 The Millses complain that Robertson's telephonic search warrant for the Unicorn Development property, which he obtained while searching the other properties, was invalid because the issuing judge failed to put Robertson under oath prior to receiving his statement of probable cause. This contention has some merit, at least as to the constitutionality of the search.
 
 
 23
 Under Washington State's Superior Court Criminal Rule 2.3(c), an affidavit establishing grounds for issuing a warrant may consist of "an officer's sworn telephonic statement to the judge," if the testimony is electronically recorded by the judge. Judge Hancock violated this rule. However, Judge Hancock did permit Robertson to sign a written affidavit five days later.
 
 
 24
 There is Washington authority for the proposition that the warrant should be considered valid in these circumstances, because Robertson could still be held liable if the statements in his signed affidavit were false, and he would not be permitted to avoid a suit for perjury by relying on his failure to take an oath. See State v. Douglas, 71 Wash.2d 303, 310-11, 428 P.2d 535, 539-40 (1967). A similar theory applies to violations of the federal analogue to Rule 2.3(c), Federal Rule of Criminal Procedure 41(c)(2). See United States v. Johnson, 641 F.2d 652, 657-58 (9th Cir.1980) (affidavit given after testimony). Generally, purely technical violations of Rule 41(c) will not render the warrant constitutionally invalid in the absence of bad faith or prejudice. See United States v. Luk, 859 F.2d 667, 671-72 (9th Cir.1988); United States v. Ritter, 752 F.2d 435, 441 (9th Cir.1985).
 
 
 25
 The diversion from the applicable rule is arguably more severe in this case than in the others cited above, in that an oath was not administered to Robertson immediately after the testimony was taken, and five days elapsed before Robertson signed a statement.[8] Nonetheless, Robertson remains cloaked in a qualified immunity if he relied on that warrant in reasonable good faith. Once again, the Millses have not presented evidence placing at issue the reasonableness of Robertson's reliance. Given the evidence Robertson had gathered and the technical nature of the violation, coupled with Robertson's later affirmation of his statement (this time under oath), it would be unduly harsh to strip him of his immunity for relying on the warrant. Cf. United States v. Weber, 923 F.2d 1338, 1346 (9th Cir.1990) (time pressures under which officer is operating when obtaining warrant may bear on whether officer may rely in good faith on warrant despite omission in affidavit). On balance, we are not persuaded that Mills' fourth contention indicates reversible error in granting Robertson a dismissal.B
 
 
 26
 The Millses assert that specific provisions of the Washington State statute under which their equipment was seized, contained in section 69.50.505, are unconstitutional. They contend that this left no valid statutory authority for the searches and seizures.[9]
 
 
 27
 According to the Millses, their equipment could have been seized only pursuant to subsections (a)(2) or (a)(6) of section 69.50.505. At the time of the seizure, there was no right to a hearing on the forfeiture. See Wash.Rev.Code Ann. Sec. 69.50.505(e) (1985) (providing for a hearing only if the seizure was pursuant to subsections (a)(4) or (a)(7)).[10] Forfeiture provisions in earlier versions of section 69.50.505 which did not permit a pre-forfeiture (as opposed to a pre-seizure) hearing had been held unconstitutional. Compare State v. Matheason, 84 Wash.2d 130, 134, 524 P.2d 388, 390 (1974) (section permitting forfeiture without opportunity for hearing invalid) with Crape v. Mount, 32 Wash.App. 567, 573-74, 648 P.2d 481, 485 (section providing opportunity to be heard valid on its face), review denied, 98 Wash.2d 1008 (1982). Pre-amendment forfeitures under sections (a)(2) or (a)(6) thus may be subject to due process challenges.[11]
 
 
 28
 Whether or not the state forfeiture statute was valid, Officer Robertson's immunity depends upon whether his reliance upon the statute was objectively reasonable. See Pierson v. Ray, 386 U.S. 547, 555-57, 87 S.Ct. 1213, 1218-19, 18 L.Ed.2d 288 (1967) (police excused from section 1983 liability for acting pursuant to statute reasonably believed to be valid). The facts indicate that Robertson's reliance was reasonable. Portions of section 69.50.505 had survived constitutional challenges in the Washington courts. See, e.g., Irwin v. Mount, 47 Wash.App. 749, 752-53, 737 P.2d 277, 279-80, review denied, 108 Wash.2d 1031 (1987); Lowery v. Nelson, 43 Wash.App. 747, 749-52, 719 P.2d 594, 596-97, review denied, 106 Wash.2d 1013 (1986), appeal dismissed, 479 U.S. 1024, 107 S.Ct. 864, 93 L.Ed.2d 820 (1987). Furthermore, to the extent section 69.50.505(a) permitted the unconstitutional practice of forfeiture without notice and an opportunity to be heard, Robertson attempted to correct this defect as applied to the Millses by sending them notification and offering them a chance to be heard. Finally, to the extent that the Millses were actually denied a constitutionally required hearing, there has been no assertion (much less proof) that Robertson personally and in bad faith deprived the Millses of the hearing. See Rizzo v. Goode, 423 U.S. 362, 375-77, 96 S.Ct. 598, 606-07, 46 L.Ed.2d 561 (1976) (stressing importance of culpability of officials against whom relief is sought); see also Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir.1989) (supervisors are not vicariously liable for their subordinates' actions under section 1983); cf. Monell v. Department of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (need causal link to deprivation of constitutional right for liability under section 1983 to attach).
 
 
 29
 The Millses have failed to present any evidence controverting the apparent reasonableness of Robertson's reliance upon the forfeiture statute. There is no genuine issue of fact regarding Robertson's qualified immunity defense from liability under section 1983. Thus, on this ground too, the district court's grant of summary judgment dismissing Robertson was correct.
 
 III
 
 30
 Our conclusion that this action was properly dismissed makes it unnecessary for us to address the Millses' contention that there was a material issue of fact as to ownership of the seized equipment and Robertson's contention that the Millses did not sufficiently allege a cause of action against Robertson under section 1983.
 
 
 31
 The Millses have not set forth any basis for an action against Sheriff Graves and apparently are not contesting the dismissal as to him.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 To the extent that some of these specific contentions were not fully presented below, we have discretion to consider them for the first time on appeal. See People of the Territory of Guam v. Okada, 694 F.2d 565, 570 n. 8 (9th Cir.1982), modified, 715 F.2d 1347 (1983), cert. denied, 469 U.S. 1021, 105 S.Ct. 441, 83 L.Ed.2d 367 (1984)
 
 
 [2]
 There is nothing in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), cited by the Millses, which could be read to set forth the requisites of a facially valid warrant
 
 
 [3]
 This particular complaint arises from Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which predates the Court's present "totality of the circumstances" test and has been overruled on other grounds. See, e.g., United States v. Salvucci, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980)
 
 
 [4]
 Officer Robertson had identified the "anonymous tipster" and concluded that he or she was a concerned citizen as well
 
 
 [5]
 Even if an innocent explanation were possible, such would not necessarily obviate a finding of probable cause. See United States v. Bernard, 623 F.2d 551, 560 (9th Cir.1979)
 
 
 [6]
 This conclusion moots Robertson's challenges to the various affidavits submitted, some of them unsigned, which rebut his warrant affidavit
 
 
 [7]
 Subsection (a)(4), which includes "all conveyances" which transport or facilitate the transportation of controlled substances or of objects covered in (a)(2), would also seem to be a logical candidate to justify the seizure of the Millses' equipment. However, the case law relevant to that subsection appears to negate that view. See Kahler v. Kernes, 42 Wash.App. 303, 307-08, 711 P.2d 1043, 1045-46 (1985) (subsection (a)(4) authorizes forfeiture only of vehicles used for drug transportation, rather than merely for drug transactions)
 
 
 [8]
 The Millses cite United States v. Shorter, 600 F.2d 585 (6th Cir.1979), to stress the importance of an immediate oath-taking. Shorter does not reflect the law of this circuit. See Johnson, 641 F.2d at 657 (rejecting Shorter )
 
 
 [9]
 Although this issue was not specifically raised before the district court, it may appropriately be considered for the first time on appeal. See Brogan v. San Mateo County, 901 F.2d 762, 765 (9th Cir.1990) (applying Quinn v. Robinson, 783 F.2d 776, 814 (9th Cir.), cert. denied, 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986))
 
 
 [10]
 Later in 1989, this section was amended to provide for hearings after seizures under the other subsections as well. See Omnibus Drug Act, ch. 271, sec. 212, Sec. 69.50.505(e), 1989 Wash.Legis.Serv. 883, 908 (West) (codified at Wash.Rev.Code Ann. Sec. 69.50.505(e) (Supp.1990)); see also 1989 Wash.Legis.Serv. at 935 (amendments effective May 7, 1989)
 
 
 [11]
 Robertson argues that the Millses lack standing to challenge the apparent unconstitutionality of the statute because they were notified of the seizure and afforded an opportunity to be heard. See County Court of Ulster County v. Allen, 442 U.S. 140, 154-55, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979) ("A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights."). Although it is clear that the Millses were mailed forfeiture notices and were actually aware of the seizure, because it is uncertain whether they received the official notices and because they were never granted a hearing, they have sufficiently established standing to assert the alleged unconstitutionality of the applicable forfeiture statute