51 F.3d 282
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon AYALA-ZEPEDA, Victor Lomeli-Rodriguez, Vicente
Fernandez-Flores, Luis Garcia-Flores, Defendants-Appellants.
 Nos. 94-50452, 94-50472, 94-50454, 94-50470.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 10, 1995.
Decided March 29, 1995.
 
 Before: WALLACE, Chief Judge, HUG, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ramon Ayala-Zepeda, Victor Lomeli-Rodriguez, Vicente Fernandez-Flores and Luis Garcia-Flores appeal their convictions by conditional guilty pleas to possession of false identification documents in violation of 18 U.S.C. Sec. 1028(a)(3). The appellants argue that the district court erred by denying their joint motion to suppress evidence obtained through a defective search warrant. Because we find that the district court did not err in applying the "good faith" exception articulated in United States v. Leon, 468 U.S. 897 (1984), we affirm.
 
 
 3
 The district court had jurisdiction in this criminal case pursuant to 18 U.S.C. Sec. 3231. We have appellate jurisdiction under 28 U.S.C. Sec. 1291 and under 18 U.S.C. Sec. 3742(a)(1).
 
 FACTS
 
 4
 On March 29 and 30, 1994, Los Angeles Police Officer George Brietigam III, responding to complaints by local citizens and businesses suspicious of apparent trafficking in illegal registration documentation, established surveillance of the area of Seventh and Lake Streets in Los Angeles. During his surveillance, Officer Brietigam observed about 30 Hispanic men loitering near that intersection. The men took turns flagging down passing cars while yelling "micas," a slang term for Immigration and Naturalization Service alien registration cards.
 
 
 5
 When a car would stop, one of the Hispanic men would run to the vehicle's window and write down information supplied by the vehicle's occupants. Often, the Hispanic man would show the vehicle's occupants what appeared to Officer Brietigam to be a sample registration card. The vehicle would then be directed to one of two nearby photo shops. Those in the vehicle would apparently have their pictures taken at the photo shop, then hand the photographs to the Hispanic man who had initially flagged them down. That Hispanic man would then walk to the nearby William Penn Hotel, emerging about 20 minutes later. Thereafter, the Hispanic man would deliver identification cards to the occupants of the vehicle for an unknown amount of cash.
 
 
 6
 During his surveillance, Officer Brietigam observed this pattern about 30 times. Concerned that this activity was indicative of illegal trafficking in registration documentation, Officer Brietigam solicited advice from other law enforcement officers who confirmed that this pattern was consistent with such illegal activity.
 
 
 7
 Unable to follow the Hispanic men into the William Penn Hotel himself, Officer Brietigam spoke to an "Anonymous Citizen Informant" ("ACI") who told him that he/she had seen the same Hispanic men that Officer Brietigam had observed on the street enter rooms 326, 329, 436, and 608 of the William Penn Hotel and exit those rooms with various types of identification cards. Additionally, the informant stated that he/she had heard loud music playing in those rooms, as well as the sound of typewriters.
 
 
 8
 Armed with this information, Officer Brietigam swore out an affidavit in support of his request for a search warrant of rooms 326, 329, 436, and 608 of the hotel. In his affidavit, he stated that he had been a police officer for over four years and was familiar with the patterns of activity associated with illegal trafficking in registration documentation. He then related the above information concerning his observations and the declarations of the ACI.
 
 
 9
 On April 5, 1994, Officer Brietigam obtained a search warrant from a Los Angeles County Municipal Court Judge to search rooms 326, 329, 436, and 608 of the hotel for fraudulent identification documents and implements used to manufacture such documents. On April 6, 1994, officers of the Los Angeles Police Department, together with agents of the INS and Postal Inspectors from the United States Postal Inspection Service, executed the warrant and searched the rooms. The search yielded a large number of illegal registration documents, laminates, laminating machines and typewriters in the targeted rooms. Each of the appellants was also present in one of the rooms at the time of the search.
 
 
 10
 The appellants jointly moved to suppress the evidence obtained during the search, arguing that the warrant was unsupported by probable cause and that it was so facially deficient that the officers could not rely in good faith on its validity. The district court noted that the warrant did appear "very skimpy" but concluded that the good faith exception did apply. The district court therefore denied the appellants' motion to suppress. The appellants were subsequently convicted, sentenced, and now appeal the district court's decision to deny their suppression motion.
 
 DISCUSSION
 
 11
 We review for clear error a judge's decision to issue a search warrant and will uphold that determination so long as there was a substantial basis for him to conclude from the totality of the circumstances that probable cause existed. United States v. Mendonsa, 989 F.2d 366, 368 (9th Cir.1993); United States v. Bertrand, 926 F.2d 838, 841 (9th Cir.1991).
 
 
 12
 Appellants contend that the search warrant issued by the Los Angeles County Municipal Judge was unsupported by probable cause. Particularly, they argue that the ACI's information was uncorroborated and therefore could not be relied upon as the sole basis to issue the warrant. Because we conclude, in this case, that the officers could properly have relied in good faith on the validity of the search warrant whether or not it was supported by probable cause, we need not discuss this issue further.
 
 
 13
 We review de novo the district court's decision to apply the good faith exception. United States v. Ramos, 923 F.2d 1346, 1353 (9th Cir.1991). When a warrant is based on insufficient probable cause, the evidence need not be suppressed if the executing officer relied in good faith on the warrant's validity. United States v. Leon, 468 U.S. 897, 920-22 (1984). This reliance must be objectively reasonable. Id. at 922. The good faith exception itself has exceptions and may not be invoked if the affidavit supporting the warrant was based on the affiant's knowing or reckless falsity, or if the magistrate issuing the warrant abandoned his neutral and detached role, to act instead as " 'an adjunct law enforcement officer.' " Id. at 914. Likewise, the court will not defer to a warrant " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " Id. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 611 (1975)). Nor can an officer rely in good faith on a warrant that is so facially deficient, e.g., by failing to state with particularity the place to be searched and items to be seized, that he cannot reasonably presume it to be valid. Leon, 468 U.S. at 923.
 
 
 14
 In the present case, there is no evidence that Officer Brietigam knowingly or recklessly included false information in the affidavit supporting the search warrant. Likewise, there is no evidence that the magistrate acted in any manner other than that of a neutral and detached arbiter of the facts before him. Rather, appellants argue that Officer Brietigam could not have relied in good faith on the warrant because it was so obviously lacking in probable cause as to be no more than a "bare bones" ratification of the conclusions of others. See id. at 915. We find appellants' contention to be without merit.
 
 
 15
 In the present case, the search warrant and supporting affidavit were not so obviously deficient that Officer Brietigam could not rely on the warrant's validity. Officer Brietigam set forth how he personally observed activity indicating that illegal trafficking in registration documentation was taking place. He personally observed the pattern of solicitation, use of the photo shops, trips to the hotel, and what reasonably appeared to be the closing of each deal. He saw the men enter the hotel, but was unable to follow the men himself. He inquired from the ACI as to what activity he/she had observed. The ACI provided specific room numbers and confirmed that the same men Officer Brietigam observed outside were, indeed, those who were going in and out of the specified hotel rooms with fake identification and registration cards. Although this information was consistent with Officer Brietigam's suspicions, he was unable to independently corroborate the ACI's information. Nevertheless, the municipal court judge issued the warrant. The warrant itself specified exactly what rooms were to be searched as well as what items could be seized pursuant to the search. Such a specific search warrant, supported as it was with detailed information indicating the likelihood of criminal activity and the place within which such activity was taking place, could properly be relied upon by the executing officer. See Mills v. Graves, 930 F.2d 729, 732 (9th Cir.1991) (holding that to be facially valid, warrant need only specify with particularity place to be searched and items to be seized and need not articulate actual basis for magistrate's finding of probable cause).
 
 
 16
 The Supreme Court has held that where the executing officer's reliance on the validity of a search warrant is objectively reasonable, we will not suppress discovered evidence when that warrant subsequently turns out not to have been supported by probable cause. See Leon, 468 U.S. at 922. In the present case, we conclude that Officer Brietigam's reliance on the warrant's validity was objectively reasonable; therefore the district court did not err in applying the good faith exception.
 
 CONCLUSION
 
 17
 For the reasons set forth above, we conclude that the district court did not err in applying the good faith exception and denying appellant's motion to suppress. Accordingly, the judgment of the district court is affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3