958 F.2d 379
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Kalman KOHN, Luke J. Scully, and John Seleen,
Defendants-Appellants.
 Nos. 90-30310, 90-30321 and 90-30322.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 10, 1992.
Decided March 23, 1992.
As Amended May 14, 1992.
 
 Before JAMES R. BROWNING, D.W. NELSON, and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kohn, Scully, and Seleen ("defendants") were charged with manufacturing psilocybin mushrooms, a Schedule I controlled substance, and with conspiracy to manufacture said mushrooms. The charges arose from the discovery of several hundred pounds of mushrooms in "plain view" during the execution of a search warrant for marijuana. The defendants moved to suppress the fruits of the search on the grounds that the warrant was obtained through materially false affidavits, and that the criminal nature of the mushrooms was not "immediately apparent." The district court denied the motion to suppress after holding a hearing, and the defendants entered conditional guilty pleas. They now appeal the denial of their motion to suppress. We affirm.
 
 FACTS
 
 3
 Detective Kurt Wuest began his investigation of the defendants after Warren Gibson, a dairy farmer, reported that the defendants were behaving "suspiciously." Specifically, defendants were purchasing large amounts of cow manure from Gibson on a regular basis. Gibson told Wuest that the defendants paid him in cash from a large roll of bills,[1] and that they were quite vague when asked what they were growing.
 
 
 4
 Wuest's investigation turned up more evidence which suggested to him that the defendants were growing marijuana in buildings on their property. A trained narcotics dog "alerted" to the presence of drugs on the money the defendants used to pay Gibson. Wuest's review of power company records revealed that the defendants used three times as much electricity each month as the prior occupants. (Indoor marijuana growths use a great deal of electricity). Wuest drove by the house around 20 times and talked to neighbors, but could find no signs of an ongoing business enterprise or of major additions to the property that might explain the increased power usage.[2] Wuest also determined that defendant Seleen had been arrested or cited twice for offenses involving marijuana.
 
 
 5
 Based on this evidence, Wuest applied for a search warrant to search the premises for marijuana and related paraphernalia. On the basis of Wuest's detailed, 17-page affidavit with exhibits, the judge issued a search warrant which Wuest and other officers executed. Four people, including defendants, were present. None would talk to the police, and one tried to flee when the police arrived. The officers did not find marijuana, but did see approximately 400 pounds of live and dried mushrooms throughout the house and adjoining buildings. Both Wuest and Sergeant Siel had experience in recognizing psilocybin mushrooms, and suspected that the mushrooms in defendants' house were in fact controlled substances. The officers seized samples of the mushrooms and took them to the police laboratory for analysis, where the mushrooms were indeed found to contain psilocybin.
 
 DISCUSSION
 
 6
 Defendants challenge the affidavit as containing material misstatements and omissions, and challenge the "plain view" seizure of the mushrooms. The district court's factual findings as to whether statements in an affidavit were false or were omitted are reversed only if clearly erroneous. United States v. McQuisten, 795 F.2d 858, 863 (9th Cir.1986). Whether any omissions or misstatements are material is a mixed question of law and fact which this Court reviews de novo. Id. Once the affidavit is redacted by deleting misstatements and including material omissions, United States v. Bertrand, 926 F.2d 838, 842-43 (9th Cir.1991), this Court reviews de novo the question whether the redacted affidavit established probable cause supporting the issuance of a search warrant. United States v. Grandstaff, 813 F.2d 1353, 1355 (9th Cir.), cert. denied sub nom. Brown v. United States, 484 U.S. 837 (1987).
 
 
 7
 Where a defendant objects to the affidavit supporting a search warrant on the grounds that it contains material misstatements, the appropriate response is to hold a hearing to consider these claims once the defendant makes a preliminary showing. Franks v. Delaware, 438 U.S. 154, 155-56 (1978). The same rule applies when a defendant alleges that an affidavit contains material omissions. United States v. Stanert, 762 F.2d 775, 781 (9th Cir.), amended 769 F.2d 1410 (9th Cir.1985). The district court here held such a hearing, but upheld the warrant because it found no misstatements and concluded that Wuest's omissions were not material.
 
 
 8
 Defendants first object to Wuest's statement in the affidavit that there "have not been any major additions" to the property which could account for the increased electrical usage. Wuest was in fact told by defendants' neighbor, himself a policeman, that the defendants had enclosed a small, three-sided barn.[3] Defendants also object to Wuest's statement that there were no visible activities on the property "consistent with a legitimate commercial enterprise." Wuest was told by a neighbor that there was a kiln on the property, but the affidavit did not mention the kiln as a possible explanation for the increased power usage, or as consistent with defendants' claim that they were potters operating a commercial enterprise. The failure to mention both the kiln and the enclosure of the barn constitute "omissions" which we must include in the affidavit in determining whether probable cause existed.
 
 
 9
 Defendants next contend that Wuest "deliberately exaggerated the extent of his observations" of the property, and that this constitutes a material misstatement. The affidavit states "I have personally observed the Perkins Rd. property on numerous occasions ..." Wuest did in fact observe the property approximately 20 times while driving past it. He stopped his car to observe twice, both times at night. Although defendants may question the efficacy of Wuest's observations, the affidavit did not contain any misstatements regarding the extent or manner of those observations.
 
 
 10
 Next, defendants argue that the affidavit should have stated that as much as 90% of United States currency contains trace amounts of narcotics. They claim that the dog handler's affidavit should have included references to published articles that questioned the validity of canine alerts to currency for this reason. There is no evidence that the dog handler believed those articles were correct. In fact, the dog handler specifically testified at the hearing that he felt that his dog (Scoop)'s alert was valuable because Scoop did not always alert to currency. Defendants' expert testimony may call into question the probative value of the dog alert evidence, but it does not demonstrate a material omission in the affidavit.
 
 
 11
 Finally, defendants argue that the magistrate should not have considered the fact that defendants paid for the manure in cash because that was common practice. Again, although defendants may be able to challenge the probative value of this evidence, the affidavit accurately related what occurred.
 
 
 12
 In sum, the district court properly found that Wuest's affidavit was defective only in omitting the facts that defendants had enclosed a small barn on their property and that they owned a kiln. We must next determine whether the affidavit--as amended to include those facts--provides probable cause to issue a warrant.[4]
 
 
 13
 The addition of these facts, provided in an attempt only to explain the increased electrical usage, does not materially affect the probable cause determination. These facts do not explain the use of over 11,000 kilowatts in a single month in a one-story house. The government presented evidence at the hearing that a pottery business running five kilns full time used less than half that much power. That Wuest was told of the presence of one kiln, which may or may not have been electric, does not provide an adequate explanation for the increased power usage. Defendants do not explain how enclosing a barn, a process which was completed before the peak electrical usage, could cause the increases in power usage. Even as amended, the affidavit still presents a large and unexplained increase in power usage.
 
 
 14
 In determining probable cause to issue a search warrant, the Court need find "only the probability, and not a prima facie showing, of criminal activity." United States v. Ellsworth, 647 F.2d 957, 964 (9th Cir.1981), cert. denied, 456 U.S. 944 (1982). Applying this "probability" standard, this circuit has held that "the affidavit need not establish that it was 'more likely than not' that evidence would be found or preclude other innocent interpretations for the activities at his house. The affidavit need only 'enable the magistrate to conclude that it would be reasonable to seek the evidence in the place indicated by the affidavit.' " United States v. Taylor, 716 F.2d 701, 705-06 (9th Cir.1983) (quoting United States v. Hendershot, 614 F.2d 648, 654 (9th Cir.1980)); accord Texas v. Brown, 460 U.S. 730, 742 (1923) (probable cause "does not demand any showing that such a belief be correct or more likely true than false").
 
 
 15
 It may well be true that none of the facts in the affidavit, standing alone, would be enough to provide probable cause. In combination, however, all of the factors noted in the affidavit add up to reasonable grounds to suspect illegal activity on defendants' property. The affidavit in this case may not preclude all innocent interpretations of the increased power usage and other evidence, but it provides sufficient evidence that it was reasonable to seek evidence of a marijuana growth operation on defendant's property.
 
 
 16
 Defendants also challenge the seizure of the mushrooms during the search under the plain view doctrine. Whether a search is permissible under the plain view doctrine is a mixed question of law and fact which is reviewed de novo. United States v. Disla, 805 F.2d 1340, 1346 (9th Cir.1986).
 
 
 17
 For a seizure outside the scope of a warrant[5] to be valid under the plain view doctrine, three criteria must be satisfied. First, the officers must not have violated the Fourth Amendment in arriving on the scene. Second, the items seized must actually be in plain view. Finally, the criminal nature of the items seized must be "immediately apparent" to the officers. Horton v. California, 110 S.Ct. 2301, 2308 (1990). There is no problem with the first two requirements. As determined above, the officers entered defendants' property while executing a valid warrant. The defendants do not contest that the mushrooms were in plain view. Indeed, they were everywhere.
 
 
 18
 Defendants contend, however, that the criminal nature of the mushrooms could not have been "immediately apparent" to the officers. At the suppression hearing, defendants produced evidence from a mycologist that psilocybins were visually indistinguishable from several common legal types of mushrooms. Thus, defendants contend, the criminal nature of the mushrooms could not have been "immediately apparent."
 
 
 19
 For a plain view seizure to be lawful, the officers must have probable cause to believe that the seized item is incriminating. Arizona v. Hicks, 480 U.S. 321, 326 (1987). However, probable cause "does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion) (citation omitted).
 
 
 20
 The totality of the circumstances surrounding the search justifies the seizure of the mushrooms. The police had probable cause to believe that an illegal operation of some sort was taking place when the warrant was issued, based on defendants' suspicious behavior and their large electrical usage. They observed enormous numbers of mushrooms which two experienced officers who had correctly identified narcotic mushrooms before believed were psilocybins. Defendants refused to talk to the police, and one of them tried to flee the scene.
 
 
 21
 Defendants counter that flight does not constitute probable cause to believe that a crime has taken place, and that only the character of the mushrooms, not the surrounding circumstances, affects the validity of the seizure. It is true that flight alone is not sufficient to find probable cause, or even reasonable suspicion. Benitez-Mendez v. I.N.S., 760 F.2d 907, 909 (9th Cir.1983). However, the court is clearly entitled to consider the totality of the circumstances in determining whether probable cause existed to seize an item. Thus, in United States v. Guy, 903 F.2d 1240, 1243 (9th Cir.1990), the court upheld the seizure of a safe, even though it was not itself incriminating and was without independent evidentiary value, because the presence of the safe suggested narcotics activity when combined with the other evidence police had found. Similarly, in United States v. Good, 780 F.2d 773, 775 (9th Cir.), cert. denied, 475 U.S. 1111 (1986), the court held that a revolver in plain view in a truck could be seized because the police knew that the truck's owner was suspected of pistol-whipping someone.
 
 
 22
 In this case, there was even more evidence to link the mushrooms to criminal activity. Unlike the safe and the pistol, which had nothing incriminating about them apart from their context, two officers identified the mushrooms as psilocybins. Although psilocybin mushrooms may be hard to identify, probable cause does not require that the officers know that the mushrooms are narcotic, or even that it be more likely than not that they are. All that is required is a reasonable probability. Such a probability exists here.[6]
 
 
 23
 The district court's denial of the motion to suppress evidence is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The amounts of these payments were quite small, as the price of cow manure was only $20-30 per pickup load. Gibson stated that cash payments were normal
 
 
 [2]
 Wuest was told that the residents of the house claimed to be potters, and that a kiln was in use in the house
 
 
 [3]
 Defendants cite to other construction that took place as well, including the installation of a propane tank, the addition of a gravel driveway, and the addition of windows, walls, and floors and shelving in the barn. Even if these constituted major additions, which is questionable, most of them took place inside the barn, where they would not be visible to Wuest's sources. Further, it is not clear how these improvements could account for trebled electricity usage
 
 
 [4]
 The government suggests that the court need not determine probable cause because the officers acted in "good faith" in executing the warrant. For obvious reasons, the good faith exception to the exclusionary rule does not apply when the police officer in question is alleged to have deliberately misstated or omitted facts in applying for the warrant on which he later relies. Mills v. Graves, 930 F.2d 729, 733 (9th Cir.1991)
 
 
 [5]
 The warrant authorized a search for evidence of marijuana growth only, not the mushrooms the officers seized
 
 
 [6]
 A number of cases have upheld drug identifications on the basis of far less evidence than was present here. See, e.g., Brown, 460 U.S. at 743 (opaque party balloon sufficient to suspect smuggled drugs); United States v. Del Vizo, 918 F.2d 821, 823 (9th Cir.1990) ("plastic bags with packages inside" were sufficient to suspect cocaine); United States v. Oswald, 441 F.2d 44, 46 (9th Cir.1971) ("a package wrapped in red and blue paper" was sufficient to suspect a kilo brick of marijuana); United States v. Yoon, 751 F.Supp. 161, 163-67 (D.Haw.1989) (folded and taped white business envelope sufficient to suspect PCP)
 Defendants rely on two cases from other circuits which they argue require more: United States v. Rutkowski, 877 F.2d 139, 142-44 (1st Cir.1989), in which police seized pieces of virgin metal later identified as stolen platinum, and United States v. Beal, 810 F.2d 574, 576-78 (6th Cir.1987), in which police seized fountain pens which later turned out to be guns. In both cases, the officers on the scene themselves admitted that they had not connected the items with criminal activity. That fact alone is sufficient to make these cases inapposite, since if the officers did not recognize the criminal nature of the items seized at all, that nature certainly could not have been "immediately apparent" to them.